UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA　　　　　　　　　CRIMINAL ACTION

VERSUS

JASON CATRELL WHITAKER　　　　　　　　　NO.: 15-00171-BAJ-RLB

RULING AND ORDER

Before the Court is Defendant Jason Catrell Whitaker's **Motion to Suppress Evidence (Doc. 25)**, seeking to suppress the items seized on September 1, 2015 during an encounter with the Baton Rouge Police Department. (Doc. 25 at p. 1). The United States of America ("Government") filed a memorandum in opposition. (Docs. 28). The Court held an evidentiary hearing on the motions, and permitted the simultaneous filing of post-hearing briefs. (Doc. 29).

I. BACKGROUND

On September 1, 2015, Detective Vincent Liberto ("Detective Liberto") and Detective Richard McCloskey ("Detective McCloskey") of the Baton Rouge Police Department were patrolling the area around 2112 North Foster Drive in Baton Rouge, Louisiana. (Doc. 31, Hr'g Tr. at p. 7:3-25, 8:1-5). According to the testimony adduced at the hearing, the officers pulled into a parking lot of the building located at 2112 North Foster Drive, and noticed a "CD stand"[1] playing loud music and, in front of that, a White 2010 Nissan Sentra parked in a handicapped parking space,

---

[1] The Government describes the location where Defendant is standing as "a stand where compact discs, i.e., CD's were being sold." (Doc. 28-1 at p. 2). It was located approximately 10 feet away from the parked car. (Doc. 31, Hr'g Tr. at p. 33:12-18).

but without a handicap license plate. (*Id.* at 9:16-22, 11:14-16). The officers also noticed two people standing at the CD stand. (*Id.*). One of the people at the stand was the Defendant. (*Id.* at 10:25). The officers, both of whom were wearing vests with police markings, made contact with the two people, and asked them to turn down the music. (*Id.* at 11:6-16, 25:19-22). They also instructed the men to move the car that was parked in the handicap space. (*Id.*). The officers then began to drive away. (*Id.* at 11:21-22).

Detective Liberto then noticed Defendant walking back toward the vehicle. (*Id.* at 12:4-10). Defendant was observed opening the front passenger door of the vehicle, retrieving a firearm from the pockets of his pants and place it in the front passenger side of the vehicle. (*Id.*). Then Defendant walked back to the stand. (*Id.* at 31:23-25, 32:1). After witnessing the Defendant place the pistol in the car, the officers immediately drove back into the parking lot and exited their vehicle. (*Id.* at 12:20-24) Detective Liberto then engaged Defendant. (*Id.*). Detective McCloskey testified that he walked around the vehicle, looked inside the vehicle while standing outside of it, and saw a bag of marijuana on the front driver's seat in "plain view." (*Id.* at 47:14-16). Detective McCloskey communicated to Detective Liberto that marijuana was in the vehicle. (*Id.* at 13:23-25). Detective Liberto then placed Defendant in handcuffs and advised Defendant of his *Miranda* rights. (*Id.* at 14:7-24, 47:20-22).

Detective McCloskey then returned to the vehicle, opened the door, and retrieved the bag of marijuana. (*Id.* at 48:10-19). He also searched the vehicle for the handgun he saw being placed there by the Defendant. (*Id.*). The search resulted in the discovery of a 380-Caliber Cobra Pistol and a clear plastic bag containing seven

dosage units of MDMA. (*Id.*). Detective Liberto spoke with the Defendant during the course of the search and learned that the Defendant had been previously convicted of a felony offense. (*Id.* at 15:22-25).

## II. DISCUSSION

The Defendant raises three arguments in support of the motion: First, the Defendant challenges the credibility of the officer's testimony that he observed the marijuana in plain view, specifically arguing that the lack of credibility taints any attempt to rely on the plain view doctrine.[2] (Doc. 32 at p. 4). Second, Defendant argues that the officers conducted an illegal stop when they returned to the parking lot and made contact with the Defendant for a second time. (Doc. 25-1 at p. 6). Finally, Defendant argues that the search of his vehicle after the officer allegedly saw the marijuana in plain view violated the Fourth Amendment of the U.S. Constitution under the doctrine established in *Arizona v. Gant*[3].

### A. Credibility of the Officers Testimony

"One of the most important principles in our judicial system is the deference given to the finder of fact who hears the live testimony of witnesses because of his opportunity to judge the credibility of those witnesses." *Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir.1980). In weighing credibility determinations, courts weigh factors such as inconsistencies, intentional omissions, and even demeanor of the witnesses in order to determine if the witness's testimony is credible. *See United*

---

[2] Defendant does not directly challenge the application of the plain view doctrine itself, confining his argument to the credibility of the officer's testimony that he saw the marijuana in plain view.

[3] 556 U.S. 332 (2009).

*States v. Jones*, 187 F. Supp. 3d 714, 724 (M.D. La. 2016) (finding that an officer's testimony lacked credibility due to multiple inconsistencies and omissions); *United States v. Kelley*, No. CRIM. H-09-512, 2011 WL 201477, at *5 (S.D. Tex. Jan. 20, 2011) (finding that an officer was credible when the testimony was consistent with other evidence presented to the court); *Nasakaitis Motorsports Mgmt., LLC v. Rockstar, Inc.*, No. 1:10-CV-125-HSO-JMR, 2011 WL 2446612, at *3 (S.D. Miss. June 15, 2011) (". . . [a witness's] demeanor on the stand will provide a finder of fact the additional information necessary to decide whether or not to believe him.").

Defendant argues that "there is a lack of credible testimony, either from the position of believability or from a lack of independent recollection" that the officers' testimony was credible as to what Detective McCloskey saw when he peered into the vehicle. (Doc 32 at pp. 4-5). The Court disagrees. The officers testified consistently with one another, and displayed a calm demeanor while on the stand. Finally, even though the officers each testified that they could not recall certain specific facts not germane to the issues here, the Court is not persuaded that such natural failures to recall all minor details were so great as to warrant a finding that the officers' testimony is not credible. *See United States v. Barnes*, 803 F.3d 209, 219 (5th Cir. 2015), *cert. denied sub nom. Hall v. United States*, 137 S. Ct. 691, 196 L. Ed. 2d 570 (2017) (holding that a witnesses inability to remember certain details, even when coupled with inconsistencies, did not mandate a district court to find the witness was not credible). Because Defendant failed to show otherwise, Defendant's argument fails, and the Court finds that the testimony of the officers was credible.

Accordingly, the Court accepts the credible and uncontroverted testimony of Detective McCloskey regarding the circumstances of his discovery of the marijuana.

### B. The "Stop" of the Vehicle

Defendant next argues that when the officers returned to the parking lot, but before the search of the vehicle, the officers conducted an illegal investigatory detention of Defendant. (Doc. 25-1 at pp. 3-4). The Government argues that, prior to the finding of the marijuana and placement of Defendant in handcuffs, the officers' actions were not "under the compass" of the Fourth Amendment, and therefore, within the confines of what is constitutionally permissible.[4] (Doc. 28-1 at p. 6). It is important to note that, according to the timeline established by the credible testimony of the officers, the encounter at that point in time would have been so brief as to be nearly non-existent, as Detective McCloskey saw the marijuana in the vehicle close in time to when Detective Liberto made contact with the Defendant. (Doc. 31, Hr'g Tr. at pp. 13:23-25, 14:1-5). But the contact with Defendant, as established by the evidence, was not barred by the Fourth Amendment.

The United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") has recognized that there are "three tiers of police-citizen encounters: communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable

---

[4] This section only addresses the period of time after the officers returned to the parking lot, but before the handcuffs were placed on the Defendant. Defendant does not challenge the fact that the officers had adequate justification to place him in handcuffs *after* the discovery of the marijuana.

5

cause." *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. 1982). Prior to the officers seeing the marijuana in plain view, Defendant argues that he was detained, and therefore, the police interaction was part of the second tier of police interaction requiring reasonable suspicion. The Government argues that the encounter more closely resembled the first tier.

A police interaction evolves into a detention when an officer restrains a person's freedom to walk away. *See, e.g., Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (holding that officer seized a defendant when officer created apprehension of the use of deadly force); *United States v. Wali*, 811 F. Supp. 2d 1276, 1281 (N.D. Tex. 2011) (finding that an officer who drew his firearm and ordered a defendant to the ground committed a seizure of that defendant). "This is a fact question which can be determined only on a case-by-case basis. (For example, if the person is approached in a manner which is threatening or intimidating, the stop may amount to a seizure.)" *Mendoza v. I.N.S.*, 559 F. Supp. 842, 851-52 (W.D. Tex. 1982) (*citing U.S. v. Mendenhall*, 446 U.S. 544 (1980)).

As to the period of time prior to the officers' discovery of marijuana, the Court finds that the Defendant was not detained. Prior to the time when the officers discovered the marijuana, Defendant was not yet in handcuffs, or restraints. Nor had the officers threatened to use any force to restrain him. (*See* Doc. 31, Hr'g Tr. at pp. 13:23-25, 14:1-5). At most, the interaction must be characterized as one in which police were merely communicating with the Defendant. Nothing in the record indicates that Defendant was not free to simply walk away from the encounter. Thus,

6

the police interaction was not yet subject to the restrictions imposed by the Fourth Amendment, and was thus, constitutionally permissible.

### C. The Search of the Vehicle and *Arizona v. Gant*

Defendant's final argument is that the search of the vehicle violated the United States Supreme Court's holding in *Arizona v. Gant*[5] and its progeny. (Doc. 25-1 at p. 6). Defendant argues that at the point when Defendant was arrested and placed in handcuffs, the officers no longer had the authority to continue the search. (*Id.*).

The Government argues that, under *Gant*, the officers could conduct the search as long as they reasonably believed they would find evidence of the crime for which the Defendant was arrested. (Doc. 28-1 at p. 4). The Government further argues that, regardless of *Gant*, the officer's had independent justification to search the vehicle. (*Id.*).

*Gant* limited the right of police officers to search vehicles *incident to the arrests* of occupants, and carved out an exception when the officers reasonably believe the search will yield additional evidence. 556 U.S. at 335, 343 (2009). The Court, however, finds that the reliance on *Gant* is a red herring, because the officers had independent justification, separate from a search incident to arrest, to justify the search of the vehicle. If officers possess probable cause to justify the search of a vehicle, then the search of the vehicle is permissible, and the Court does not even reach the issues presented in *Gant*. *See United States v. Hooker*, 416 F. App'x 467, 472 n. 3 (5th Cir. 2011) (recognizing that *Gant* was inapplicable to a car search conducted after an

---

[5] 556 U.S. 332 (2009)

arrest, because the officers had probable cause to suspect they would find contraband in the vehicle).

In this case the officers had independent probable cause to justify the search because they actually witnessed the Defendant place a handgun into the vehicle. (Doc. 31, Hr'g Tr. at p. 12:4-10). Moreover, it seems apparent that the manner in which the Defendant placed the handgun in the vehicle suggested an attempt to hide the gun from the officers. (*See id.*). Taking these facts together, the Court concludes that the officers had independent probable cause to justify the search. Accordingly, Defendant's Motion must be denied.

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant's **Motion to Suppress (Doc. 25)** is **DENIED.**

Baton Rouge, Louisiana, this 1st day of June, 2017.

_____
**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**